## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| **DENNIS JAMES DUFFY** | ) | |
| | ) | |
| | ) | **Civil Action No.** |
| **Plaintiff,** | ) | **2:20-CV-00085** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TRANSUNION RISK AND** | ) | |
| **ALTERNATIVE DATA** | ) | |
| **SOLUTIONS, INC. d/b/a TLOxp** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO <u>DEFENDANT'S MOTION TO DISMISS</u>

A nationwide background check company, which is a subsidiary of one of the largest consumer reporting agencies in the nation, created a false background report on a Vermont resident based on Vermont public records obtained from Vermont government entities. It then failed to properly perform a reasonable investigation into the inaccuracy of the Vermont public records. In the process, it intentionally interfered with a Vermont resident's contractual relationships, and defamed a Vermont resident's reputation.

Despite these facts, and the fact that as a wholly owned subsidiary of TransUnion, Defendant creates hundreds or thousands of background reports on Vermont residents every year, Defendant now contends it is not subject to personal jurisdiction in this Court. For the reasons set forth below, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

## I.    <u>FACTS</u>

Plaintiff Dennis James Duffy is an adult individual who resides in Essex Junction, Vermont. (ECF No. 8 at ¶ 2). Defendant TransUnion Risk And Alternative Data Solutions, Inc.

d/b/a TLOxp (hereafter "TransUnion Risk") is a consumer reporting agency which conducts business in the State of Vermont and has a principal place of business located at 4530 Conference Way South, Boca Raton, FL 33431. *Id*. at ¶ 3.

According to Defendant's Corporate Disclosure Statement, Defendant is a wholly owned subsidiary of TransUnion Intermediate Holdings, Inc. which is wholly owned by "TransUnion." (ECF No. 5). Defendant "joined TransUnion in 2013," and offers services throughout the "U.S., Puerto Rico and Guam." *See* <www.tlo.com/about-us> *and* <www.tlo.com/about-tloxp> (last accessed September 14, 2020). (ECF No. 8 at ¶ 4). Defendant, through its parent company "TransUnion," is registered as a "data broker" with the State of Vermont pursuant to 9 V.S.A. § 2430 et seq, with a registration ID of 353319. *Id*. at ¶ 5.

Upon information and belief, every year, Defendant creates hundreds or thousands of reports about Vermont residents using records obtained from local and state government entities in Vermont. *Id*. at ¶ 6. In or around July 2018, Plaintiff was attempting to secure a loan from a third-party lender. *Id*. at ¶ 10. During all relevant periods, Plaintiff resided in Vermont. *Id*. at ¶ 11. As part of the application to secure a loan, the lender obtained a consumer report from TransUnion Risk. *Id*. at ¶ 12.

Defendant's report contained defamatory, derogatory and inaccurate information about Plaintiff. *Id*. at ¶ 13. The inaccurate information includes, but is not limited to, criminal convictions and criminal penalties that do not pertain to Plaintiff (hereafter "inaccurate information"). *Id*. at ¶ 14. The report created by Defendant was solely about, concerned the activities of, and aimed at, a resident of Vermont. *Id*. at ¶ 15.

At that time that Defendant created the report, Defendant was aware that Plaintiff was a resident of Vermont, and was aware that it was making representations about a Vermont resident's history, reputation, and eligibility for certain services or products. *Id*. at ¶¶ 16-17.

The information contained in the report was derived from misreading of Vermont public records. *Id*. at ¶ 18. The Vermont records are stored and maintained by state and local governments within Vermont, and specifically, stored and maintained by Chittenden County. *Id*. at ¶¶ 19-20. In creating the inaccurate report, Defendant obtained information from state and local governments within Vermont, and specifically, from local government offices in Chittenden County. *Id*. at ¶¶ 21-22.

Defendant has sold reports containing the inaccurate information to third parties since at least July 2018. *Id*. at ¶ 23. Defendant has been reporting the inaccurate information through the issuance of false and inaccurate consumer reports that they have disseminated and resold to various persons, both known and unknown. *Id*. at ¶ 24.

Following receipt of the inaccurate report from Defendant, Plaintiff disputed the accuracy of the report with Defendant in writing from July 2018 through to the present. *Id*. at ¶ 25. In support of that dispute, Plaintiff provided documentation and information to prove that the criminal offenses and criminal penalties listed in the report were inaccurate. *Id*. at ¶ 26. Plaintiff submitted this dispute to Defendant through an online submission, and in accordance with Defendant's established procedures for disputing consumer background information. *Id*. at ¶ 27.

When Defendant responded to Plaintiff's dispute, it indicated that it intended to continue to publish the inaccurate information, and continue to disseminate that inaccurate information to other third parties, persons, and entities. *Id*. at ¶ 28.

At the time of the initial dissemination of the inaccurate and defamatory report, Defendant knew, or should have known, that the defamatory information contained in the report was false, and Defendant acted with reckless disregard for the truth. *Id*. at ¶¶ 29-30. Defendant's initial publication of the report, its failure to correct the report following the dispute, and its continued dissemination of the inaccurate report was willful and done with malice. *Id*. at ¶¶ 31-33. At the time of the post-dispute dissemination of the inaccurate and defamatory report, Defendant acted with reckless disregard for the truth and for its own financial self-interest, and its actions in publishing the report were willful, and done with malice. *Id*. at ¶¶ 34-35.

Since July 2018, Defendant has sold its inaccurate and defamatory reports to Plaintiff's prospective lenders. *Id*. at ¶36. As a result, of Defendant disseminating its inaccurate and defamatory reports to Plaintiff's prospective lenders, Plaintiff has been denied loans and the ability to fund his business and personal expenditures. *Id*. at ¶ 37.

As a result, of Defendant disseminating its inaccurate and defamatory reports to entities attempting to engage in a contractual relationship with Plaintiff, Plaintiff has lost, and been denied the opportunities to engage these third-party entities in a contractual relationship; Plaintiff's existing contractual relationships have been significantly hindered; and Plaintiff has suffered actual damages in the form of credit denial or loss of credit opportunity, credit defamation and emotional distress, including anxiety, frustration, embarrassment and, humiliation. *Id*. at ¶¶ 38-40.

The effects of Defendant's conduct, and the damages sustained by Plaintiff, were felt in Vermont. *Id*. at ¶ 41. The focal point of Defendant's conduct and the harm caused by the conduct was in Vermont. *Id*. at ¶ 42. Defendant was aware that it was creating a report solely about a Vermont resident, using a misinterpretation of data obtained from Vermont local and state

governments, and therefore, it was foreseeable at the time that it created the inaccurate report, and at the time that it refused to investigate Plaintiff's disputes, that the harm from its actions would be felt in Vermont. *Id*. at ¶ 43.

The "inaccurate information" was present in numerous reports that were published and disseminated to third parties. *Id*. at ¶ 55. There was no privilege among Defendant and the third parties to which it disseminated the inaccurate and defamatory reports. *Id*. at ¶ 56. As a result of Defendant's libel, Plaintiff has sustained significant economic and non-economic damage in the form of damage to reputation, loss of business, loss of income, loss of standing within his community, and emotional distress in the form of embarrassment, stress and anxiety. *Id*. at ¶ 59.

During the relevant time period, Plaintiff was attempting to obtain financing and loans through third party entities. *Id*. at ¶ 62. Plaintiff was expecting to enter into a contractual relationship with the third-party lenders who would provide the financing and loans. *Id*. at ¶ 63. At the time that Defendant sold the reports to the third parties, Defendant knew that Plaintiff was attempting to, and expecting to, enter into a contract with the third parties. *Id*. at ¶ 66. By disseminating an inaccurate report about Plaintiff to the third parties, Defendant knew that it would be interfering with Plaintiff's ability to enter into the contractual relationships with those third-parties. *Id*. at ¶ 67. As a result of Defendant's dissemination of the inaccurate report, the third parties refused to enter into the contractual relationships with Plaintiff. *Id*. at ¶ 68. Plaintiff suffered significant financial damage as a result of the third parties' refusal to enter into contractual relationships with Plaintiff. *Id*. at ¶ 69.

## II.   ARGUMENT

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Metro. Life Ins. Co. v.*

*Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  In evaluating whether the requisite showing has been made, the court construes the pleadings and any supporting materials in the light most favorable to the plaintiffs.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).  The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).

In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, the court looks to the law of the forum state to determine whether a federal district court has personal jurisdiction.  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (*citing* Fed. R. Civ. P. 4(k)(1)(A)).

As Your Honor recently stated, "In Vermont, a court may exercise personal jurisdiction over a non-resident defendant 'to the full extent permitted by the ... Due Process Clause' of the Fourteenth Amendment."  *Goldberg v. Dufour*, 2020 WL 620899, at *7 (D. Vt. Feb. 10, 2020) (Reiss, J.) (*citing State v. Atl. Richfield Co.*, 142 A.3d 215, 220 (Vt. 2016)).  Vermont's long-arm statute reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause.  *In re Roman Catholic Diocese of Albany, N.Y., Inc,* 745 F.3d 30, 38 (2d Cir. 2014).

"As a result, 'the first part of [the] inquiry—the interpretation of the Vermont law governing service of process—merges with the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process.'" *Goldberg,* 2020 WL 620899, at *7 (internal citations omitted).  **"This 'analysis consist[s] of two components: the 'minimum contacts' test and the 'reasonableness' inquiry.'"** *Id*. (emphasis added).

**A. <u>Defendant has Sufficient Minimum Contacts with Vermont for Specific Jurisdiction</u>**

A State may authorize its courts to exercise specific personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id*. (*citing Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)). For the purpose of establishing specific personal jurisdiction, the necessary fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. *Id*. (*citing In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013)). Further, "'a nonresident's physical presence within the territorial jurisdiction of the court is no required' to establish personal jurisdiction." *Id*. (*citing Walden v. Fiore*, 571 U.S. 277, 283 (2014). It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conduct. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

As detailed in the Amended Complaint, Defendant has sufficient minimum contacts with Vermont for this Court to exercise specific personal jurisdiction over this matter. In particular, the inaccurate report that forms the basis for Plaintiff's federal FCRA claim and his Vermont common law claims was specifically created about a resident of Vermont. The report itself contains information regarding Vermont public records, and was created as a result of Defendant obtaining records from Vermont state and local government entities. The effects of the inaccurate report were felt by a Vermont resident.

Plaintiff's Count I claim under the FCRA falls under two (2) independent provisions. Pursuant to 15 U.S.C. 1681e(b) of the FCRA, Defendant is required to "follow reasonable

procedures to assure maximum possible accuracy of the information" it contains in the report about Plaintiff.  Here, as stated above, the critical information was about a Vermont resident, and was included in the report based on Defendant obtaining records from Vermont government entities.

Plaintiff's claim pursuant to 15 U.S.C. § 1681i is premised on Defendant's mishandling of its investigation following Plaintiff's dispute of the Vermont records.  Under 15 U.S.C. § 1681i, upon receipt of Plaintiff's dispute regarding the Vermont records, Defendant was required to conduct a "reasonable investigation" into that dispute.  Given the nature of the dispute—the accuracy of the Vermont public records—that investigation necessarily mandates additional contact with Vermont and its government entities.

Additionally, for purposes of Count II, the "focal point" of Defendant's defamation of Plaintiff is Vermont.  *Calder v. Jones*, 465 U.S. 783, 788–89 (1984).  The tortious conduct and interference that forms the basis of the tortious intentional inference claim in Count III took place in Vermont.  In particular, the benefit of the transaction interfered with by Defendant would have been felt in Vermont, the contractual relations interfered with would have involved a Vermont resident and his Vermont business, and the damage sustained by the interference was similarly felt in Vermont.

While Plaintiff's damage was caused by Defendant's contacts with Vermont, Plaintiff is not Defendant's only link to Vermont, and instead, Plaintiff was harmed by Defendant's regular business activities conducted in Vermont.  As pled in the Amended Complaint, Defendant regularly obtains records from Vermont government entities when it creates hundreds or thousands of background reports every year on Vermont residents.  As pled, and as verified by Defendant's Corporate Disclosure Statement, Defendant is a wholly owned subsidiary of TransUnion.  (ECF No. 5).  Defendant offers background reports nationwide, including, of course, in Vermont,  and

through TransUnion, which it joined in 2013, is registered as a "data broker" in the State of Vermont.

**B.   It is Reasonable for the Court to Exercise Personal Jurisdiction Over Defendant**

In addition to Defendant's contacts detailed above, it is also "reasonable under the circumstances" for this Court to exercise specific jurisdiction over Defendant. *Retail Pipeline, LLC v. JDA Software Grp., Inc.*, 2018 WL 1621508, at *10 (D. Vt. Mar. 30, 2018) (Reiss, J) (*citing Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)). When an entity reaches out beyond its home state and creates obligations between itself and a resident of the forum state, it has purposely availed itself to the forum state, and it is reasonably foreseeable that it will be subject to litigation in that state. *Id.* (*citing Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 32 (2d Cir. 1996); and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Here, Defendant created a background report about a Vermont resident, using records obtained from Vermont government entities; mishandled an investigation into the accuracy of those Vermont records, communicated with a Vermont resident and Vermont government entities in the course of that investigation; defamed a Vermont resident; and intentionally interfered with a Vermont resident's ability to obtain a loan.

Under these facts, it was reasonably foreseeable by Defendant that it would be subject to litigation in Vermont, and reasonable under these circumstances for the Court to exercise jurisdiction over Defendant.

**C.   In the Alternative, Plaintiff Seeks Jurisdictional Discovery**

In the alternative, if the Court finds that the facts, as pled in the Amended Complaint, are currently insufficient to maintain personal jurisdiction, Plaintiff respectfully requests that that

9

Court allow the parties to conduct limited jurisdictional discovery.  *Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 739 (2d Cir. 2002).  Discovery of this nature would focus on Defendant's contacts with Vermont, including the number of reports created about Vermont residents, its contacts with Vermont entities to obtain records for its reports, its dissemination of background reports within Vermont, and the contacts it makes with Vermont entities following a dispute regarding Vermont records.

III.  **CONCLUSION**

For the forgoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully Submitted,

*/s/ Joseph L. Gentilcore*
Joseph L. Gentilcore, Esq.
*Admitted Pro Hac Vice*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Phone: 215.735.8600
Fax: 215.940.8000
Email: jgentilcore@consumerlawfirm.com

*/s/ Joshua L. Simonds*
Joshua L. Simonds, Esq.
THE BURLINGTON LAW PRACTICE, PLLC
2 Church Street, Suite 2G
Burlington, VT 05401
Phone: 802.651-5370
Fax: 802.651-5374
Email:jls@burlingtonlawpractice.com

*Attorneys for Plaintiff*