UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 MAR -9 PM 3: 34

CLERK

BY _____
DEPUTY CLERK

DENNIS JAMES DUFFY,              )
                                )
        Plaintiff,              )
                                )
        v.                      )        Case No. 20-cv-00085
                                )
TRANSUNION RISK AND ALTERNATIVE )
DATA SOLUTIONS, INC., d/b/a TLOxp,[1] )
                                )
        Defendant.             )

**OPINION AND ORDER DENYING AS MOOT DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT, GRANTING IN PART DEFENDANT'S MOTION
TO DISMISS THE AMENDED COMPLAINT, AND ORDERING
JURSDICTIONAL DISCOVERY**
(Docs. 4, 14)

Plaintiff Dennis James Duffy brings this action against Defendant TransUnion

Risk and Alternative Data Solutions, Inc. d/b/a TLOxp, alleging that Defendant

disseminated an inaccurate consumer report about Plaintiff and asserting claims for

violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681, as well as

defamation and intentional infliction of emotional distress claims arising out of Vermont

common law. On October 22, 2020, Defendant filed a motion to dismiss the Amended

Complaint for lack of personal jurisdiction.[2] (Doc. 14.) On November 20, 2020, Plaintiff

---

[1] The docket indicates that there are two separate Defendants in this case: "TransUnion Risk"
and "Alternative Data Solutions, Inc. d/b/a TLOxp," however Defendant is a single entity named
TransUnion Risk and Alternative Data Solutions, Inc. d/b/a TLOxp. The court therefore
respectfully directs the Clerk of Court to correct the docket to reflect this.

[2] Defendant previously filed a motion to dismiss Plaintiff's original Complaint for lack of
jurisdiction on August 27, 2020. Instead of responding to that motion, Plaintiff filed his
Amended Complaint. In light of Plaintiff's Amended Complaint, Defendant's original motion to
dismiss (Doc. 4) is DENIED AS MOOT and its second motion to dismiss will be considered in
the context of the Amended Complaint. *See Hamzik v. Off. for People with Developmental
Disabilities*, 859 F. Supp. 2d 265, 273-74 (N.D.N.Y. 2012) (finding that "[w]here a plaintiff
seeks to amend his complaint while a motion to dismiss is pending, a court has a variety of ways

opposed the motion and on December 4, 2020, Defendant replied at which time the court took the pending motion under advisement.

Plaintiff is represented by Joseph L. Gentilcore, Esq., and Joshua L. Simonds, Esq. Defendant is represented by Alexandra E. Edelman, Esq., and Timothy R. Carwinski, Esq.

## I.    Facts Alleged in the Amended Complaint.

Plaintiff is a resident of Essex Junction, Vermont. Defendant is a Delaware[3] consumer reporting agency with its principal place of business in Boca Raton, Florida that offers services throughout the United States. Plaintiff alleges that Defendant's "parent company 'TransUnion'" is a registered data broker with the State of Vermont and that every year, it creates hundreds or thousands of reports about Vermont residents using records obtained from "local and state government entities in Vermont." (Doc. 8 at 2, ¶¶ 5-6.)

In July 2018, Plaintiff was attempting to secure a loan from a third-party lender who obtained a consumer report regarding Plaintiff from Defendant. Defendant's report allegedly contained defamatory and inaccurate information, including criminal convictions and penalties that do not pertain to Plaintiff. At the time that Defendant created the report, Plaintiff asserts it was aware that he was a Vermont resident and that it was making representations about his history, reputation, and eligibility for services or products. In addition, Plaintiff alleges that Defendant derived the false information contained in the report by "misreading" Vermont public records. *Id.* at 3, ¶ 18.

Following receipt of Defendant's report, Plaintiff disputed its accuracy through an online submission in accordance with Defendant's procedures. Plaintiff provided documentation and information to prove that the information contained in the report was

---

in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint") (internal quotation marks and citation omitted).

[3] The court takes judicial notice of Defendant's state of incorporation because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

inaccurate. In responding to Plaintiff's dispute, Defendant indicated that it intended to continue to publish and disseminate the inaccurate information contained in the report. Plaintiff alleges that since July 2018, Defendant has sold inaccurate and defamatory reports about him to prospective lenders, causing Plaintiff to be denied loans, lose the opportunity to engage in contractual relationships, and suffer damages in the form of credit denial and emotional distress.

## II.     Conclusions of Law and Analysis.

### A.     Standard of Review.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "Until an evidentiary hearing is held . . . the plaintiff need make only a prima facie showing that jurisdiction exists[.]" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985). "In evaluating whether the requisite showing has been made, [the court] construe[s] the pleadings and any supporting materials in the light most favorable to the plaintiff[]." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted).

"In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, [the court] look[s] to the law of the forum state to determine whether a federal district court has personal jurisdiction[.]" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A)). In Vermont, a court may exercise personal jurisdiction over a non-resident

defendant "to the full extent permitted by the . . . Due Process Clause" of the Fourteenth Amendment. *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 10, 201 Vt. 342, 349, 142 A.3d 215, 220 (internal quotation marks omitted); *see also In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) ("Vermont's long-arm statute[] . . . reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause.") (internal quotation marks omitted). As a result, "the first part of [the] inquiry—the interpretation of the Vermont law governing service of process—merges with the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Metro. Life Ins. Co.*, 84 F.3d at 567. This "analysis consist[s] of two components: the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002); *see also N. Aircraft, Inc. v. Reed*, 572 A.2d 1382, 1386 (Vt. 1990) (providing that "once the court determines that a nonresident defendant has purposefully established minimum contacts within the forum State, several factors must be considered to ensure that exercising personal jurisdiction over the defendant is reasonable") (citation and internal quotation marks omitted).

"To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *In re Terrorist Attacks*, 714 F.3d at 673. Specific jurisdiction "exists when a forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum[.]" *Id.* at 673-74 (alteration and internal quotation marks omitted). In contrast, general jurisdiction "is based on the defendant's general business contacts with the forum and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.* at 674 (alteration and internal quotation marks omitted). "A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the 'quality and nature[]' . . . of the defendant's contacts with the forum state under a totality of the circumstances test[.]"

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

### B.     Whether General Jurisdiction Exists.

A corporation is subject to general jurisdiction in a forum when "'the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). "[T]he general jurisdiction inquiry 'is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic,'" but rather "'whether that corporation's affiliations with the State are *so* continuous and systematic *as to render it essentially at home* in the forum.'" *Brown*, 814 F.3d at 627 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)).

"With respect to a corporation, the place of incorporation and principal place of business are paradigm bases . . . for general jurisdiction." *Daimler*, 571 U.S. at 137 (alteration and internal quotation marks omitted). A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "In practice, this should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the nerve center.[]" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (citing *Hertz*, 559 U.S. at 93) (internal quotation marks omitted).

As the Second Circuit observed:

> [I]n assessing the extent of a corporation's contacts in a state for general jurisdiction purposes, we must assess the company's local activity not in isolation, but *in the context of the company's overall activity*: the general jurisdiction inquiry "does not focus solely on the magnitude of the defendant's in-state contacts," but "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide."

*Brown*, 814 F.3d at 629 (emphasis in original) (quoting *Daimler*, 571 U.S. at 139 n.20). "Only in the 'exceptional' case will another jurisdiction be entitled to exercise such sweeping powers as the use of its adjudicatory authority to decide matters unrelated to its citizens or to affairs within its borders." *Id.* at 627 (quoting *Daimler*, 571 U.S. at 139 n.19).[4]

Neither of the "paradigm bases" of general jurisdiction exists in this case because Defendant is incorporated in Delaware and has its principal place of business in Florida. *Daimler*, 571 U.S. at 137 (alteration, omission, and internal quotation marks omitted). The court therefore may only exercise general jurisdiction if this is an "exceptional" case. *See Brown*, 814 F.3d at 627 (holding that "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business").

Plaintiff alleges, upon information and belief, that Defendant "creates hundreds or thousands of reports about Vermont residents using records obtained from local and state government entities in Vermont." (Doc. 8 at 2.) However, there is no indication that Defendant's contacts with Vermont are any more significant than its contacts with any other state. *See Daimler*, 571 U.S. at 139 n.20 (finding that "[a] corporation that operates in many places can scarcely be deemed at home in all of them"). Plaintiff further asserts that Defendant's parent company is a registered data broker in Vermont, however, "federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate 'consent'–perhaps unwitting–to the exercise of general jurisdiction[.]" *Brown*, 814 F.3d at 637. Because the paradigm

---

[4] The *Daimler* Court recognized *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) as an "exceptional case" in which a corporation was subject to general jurisdiction in a forum other than its state of incorporation or principal place of business. In *Perkins*, the defendant was incorporated under the laws of the Philippines where it operated gold and silver mines. During the Japanese occupation of the Philippines during World War II, the defendant ceased its mining operations there, and its president moved to Ohio, "where he kept an office, maintained the company's files and oversaw the company's activities." *Daimler AG v. Bauman*, 571 U.S. 117, 129 (2014). The Supreme Court held that Ohio courts could exercise general jurisdiction over the defendant without offending due process because "Ohio was the corporation's principal, if temporary, place of business." *Id.* (internal quotation marks omitted).

bases of general jurisdiction do not exist and this is not an exceptional case, the court cannot exercise general jurisdiction over Defendant consistent with the Due Process Clause.

## C.    Whether Specific Jurisdiction Exists.

Defendant contends that this court lacks specific jurisdiction because Plaintiff's claims do not arise out of Defendant's contacts with Vermont and because Defendant's limited contacts with the state do not constitute a substantial connection. "[A] State may authorize its courts to exercise [specific] personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear*, 564 U.S. at 923 (third alteration in original) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). "For the purpose of establishing specific personal jurisdiction, the necessary fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *In re Terrorist Attacks*, 714 F.3d at 674 (internal quotation marks omitted).

In order for the court to exercise "case-linked" or specific jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (emphasis, internal quotation marks, and alterations omitted). There must be "'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.

Plaintiff argues that the report that forms the basis of his claims was created about a Vermont resident and contained false information gleaned from misreading Vermont public records. He asserts that the reputational damage caused by the inaccurate report was suffered by him in Vermont and the contractual relations allegedly interfered with involved a Vermont resident. He does not further allege, however, that he was denied credit in the State of Vermont or that Defendant's report about Plaintiff was sent to Vermont financial institutions or other Vermont lenders or otherwise disseminated in the forum state. He also does not establish that Defendant sold or disseminated other reports in Vermont.

"The 'effects test' theory of personal jurisdiction is typically invoked where the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018) (internal quotation marks and citation omitted). "Exercise of jurisdiction in such circumstances 'may be constitutionally permissible if the defendant expressly aimed its conduct at the forum.'" *Id.* (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)). The "foreseeability of causing injury in another State," *Burger King*, 471 U.S. at 474, will not alone suffice and "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285.

In *Calder v. Jones*, the Supreme Court held that there was specific jurisdiction in California over non-resident defendants who published an allegedly libelous article about a California resident. Because the article concerned the California activities of a California resident, impugned the professionalism of a person whose career was centered in California, was drawn from California sources, and the brunt of the reputational harm was felt in California, "the focal point both of the story and of the harm suffered" was California. *Calder*, 465 U.S. at 789. In *Walden*, the Supreme Court clarified that:

> [t]he crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. . . . Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for

8

publication in California that was read by a large number of California citizens.

571 U.S. at 287-88.

In this case, while Defendant knew that Plaintiff was a Vermont resident, this is insufficient to establish that Defendant "aimed its conduct at the forum." *Charles Schwab*, 883 F.3d at 87. Even though the misinformation was allegedly derived from Vermont public records, there is no indication that Defendant disseminated the allegedly false information *in* Vermont. Unlike in *Calder*, the only links between Defendant and Vermont appear to arise from Plaintiff's contacts with the forum. *See Walden*, 571 U.S. at 285 (holding that "however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated") (internal quotation marks and citation omitted).[5]

Because Plaintiff has failed to allege sufficient minimum contacts to support an exercise of specific jurisdiction, no further analysis is warranted. *See Metro. Life Ins. Co.*, 84 F.3d at 568 (finding that "[a] reviewing court must first examine the defendant's contacts with the forum. If the same do not exist in sufficient abundance, that is, if the constitutionally necessary first-tier minimum is lacking, the inquiry ends") (internal quotation marks omitted).

---

[5] After Plaintiff disputed the accuracy of the report and furnished corrected information through an online submission, he argues in his brief that, under 15 U.S.C. § 1681i of the FCRA, Defendant was required to investigate Plaintiff's dispute and that this investigation "necessarily mandates additional contact with Vermont[.]" (Doc. 15 at 8.) These same allegations are not, however, contained in Plaintiff's Amended Complaint. A response to an online query, without more, has generally been deemed insufficient to create specific jurisdiction. *See Dumont v. Corr. Corp. of Am.*, 2015 WL 3791407, at *6 (D. Vt. June 17, 2015) (holding that "email correspondence does not amount [to] purposeful availment of the privilege of conducting activities within Vermont"); *Zibiz Corp. v. FCN Tech. Sols.*, 777 F. Supp. 2d 408, 423 (E.D.N.Y. 2011) (concluding that "a website that only 'passively' provides information accessible to any person browsing the internet is insufficient to demonstrate that the website operator has purposefully availed itself of the privilege of conducting activities within New York"); *Artec Distrib., Inc. v. Video Playback, Inc.*, 799 F. Supp. 1558, 1561 (D. Vt. 1992) (holding that mere correspondence between parties did not establish minimum contacts "since defendants never actively sought out or initiated the relationship").

## D.   Whether the Court Should Permit Jurisdictional Discovery.

In the event the court finds dismissal is warranted, Plaintiff requests the court to permit jurisdictional discovery which he submits would focus on "the number of reports created about Vermont residents, its contacts with Vermont entities to obtain records for its reports, its dissemination of background reports within Vermont, and the contacts it makes with Vermont entities following a dispute regarding Vermont records." (Doc. 15 at 10.) "A district court is 'typically within its discretion' to order jurisdictional discovery where a plaintiff has 'made out a prima facie case for jurisdiction.'" *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (quoting *Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, 582 F.3d 393, 401 (2d Cir. 2009)).

Even where a plaintiff has not made such a showing, "[c]ourts often permit jurisdictional discovery where the plaintiff has made a 'sufficient start' toward establishing jurisdiction, but will not permit jurisdictional discovery for the purpose of a 'fishing expedition[.]'" *Cernansky v. Lefebvre*, 88 F. Supp. 3d 299, 309 (D. Vt. 2015) (internal quotation marks and citations omitted); *see also Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (holding that "it is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record") (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003)). "[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction[.]" *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003).

In this case, although Plaintiff has not established a prima facie case for jurisdiction, the allegations in the Amended Complaint are sufficient to warrant jurisdictional discovery because they represent a sufficient start to establishing personal jurisdiction. The parties are therefore permitted to engage in limited jurisdictional discovery regarding Defendant's contacts with Vermont for the purpose of an exercise of specific jurisdiction. Because Plaintiff has not made a colorable general jurisdiction

claim, no jurisdictional discovery is authorized on that basis. *See Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019) (holding that, on a motion to dismiss for lack of personal jurisdiction, "district courts have considerable procedural leeway, which includes permitting discovery in aid of the motion") (internal quotation marks, alterations, and citation omitted). No limits shall be placed on the type of discovery the parties undertake, however, it must be reasonably tailored to the narrow issue for which it is authorized.

## CONCLUSION

For the foregoing reasons, the court DENIES AS MOOT Defendant's first motion to dismiss (Doc. 4), GRANTS IN PART Defendant's motion to dismiss for lack of personal jurisdiction (Doc. 14), and ORDERS limited jurisdictional discovery on the question of specific jurisdiction to be completed within ninety (90) days of the date of this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this ___9th___ day of March, 2021.

Christina Reiss, District Judge
United States District Court